UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ALLIED WORLD SURPLUS LINES INSURANCE
COMPANY formerly known as DARWIN SELECT
INSURANCE COMPANY as subrogee of Tappan Zee
Constructors, LLC,

                              Plaintiff,

       -against-

HOFFMAN INTERNATIONAL, INC., d/b/a HOFFMAN
EQUIPMENT COMPANY, THE MANITOWOC
COMPANY, INC., and GROVE U.S. LLC,

                              Defendants.
----------------------------------------------------------------------X
THE MANITOWOC COMPANY, INC. and GROVE
U.S. LLC,

                              Third Party Plaintiffs,

       -against-

FLUOR ENTERPRISES, INC.,
AMERICAN BRIDGE COMPANY, GRANITE
CONSTRUCTION NORTHEAST, INC. and TRAYLOR
BROS., INC.,

                              Third Party Defendants.
----------------------------------------------------------------------X

**OPINION & ORDER**

19 Civ. 7073 (JCM)

       Plaintiff Allied World Surplus Lines Insurance Company ("Plaintiff" or "Allied") commenced the underlying action as subrogee of Tappan Zee Constructors, LLC ("TZC"), against Defendants Hoffman International, Inc. ("Hoffman"), the Manitowoc Company, Inc. ("Manitowoc") and Grove U.S., LLC ("Grove") (collectively, "Defendants"), asserting claims for breach of contract, breach of warranty and implied warranty, and products liability, and also

1

alleging that Hoffman failed to indemnify and hold harmless TZC. (Docket No. 1-1).[1]  Allied commenced the action on June 17, 2019 in the Supreme Court of the State of New York, County of Westchester, (*id.*), and Hoffman removed the action to this Court on July 29, 2019 pursuant to 28 U.S.C. §§ 1332(a), 1441 and 1446, (Docket No. 1).

Third-Party Plaintiffs Manitowoc and Grove ("Third-Party Plaintiffs") commenced a third-party action by filing a Third-Party Complaint[2] ("TPC") seeking contribution and indemnification from Fluor Enterprises, Inc. ("Fluor"), American Bridge Company ("American Bridge"), Granite Construction Northeast, Inc. ("Granite"), and Traylor Bros., Inc. ("Traylor") (collectively, "Third-Party Defendants"), in the event that Third-Party Plaintiffs are liable to Allied in the underlying action. (Docket No. 41).  Presently before the Court is Third-Party Defendants' motion to dismiss the TPC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 67).  On June 29, 2020, Third-Party Plaintiffs opposed the motion, (Docket Nos. 68-69), and Third-Party Defendants filed a Reply Memorandum of Law on July 7, 2020, (Docket No. 70).  For the foregoing reasons, Third-Party Defendants' motion to dismiss is denied.

## I.  FACTUAL BACKGROUND

For the purposes of resolving the instant motion, the Court accepts as true the factual allegations in the TPC,[3] and these facts are drawn from the TPC as well as the Complaint in the underlying action brought by Allied.

---

[1] This action is before this Court for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636 (c). (Docket No. 66).

[2] Third-Party Defendants commenced this third-party action on January 23, 2020, (Docket No. 31), and, thereafter, filed an Amended Third-Party Complaint on February 26, 2020, (Docket No. 41).

[3] *See Amguard Ins. Co. v. Getty Realty Corp.*, 147 F. Supp. 3d 212, 216 n.2 (S.D.N.Y. 2015); s*ee also Montgomery v. Holland*, 408 F. Supp. 3d 353, 361 (S.D.N.Y. Sept. 30, 2019) ("In considering a motion to dismiss, a court must

**A.  The Underlying Action**

The underlying action and the third-party action arise out of a crane collapse that occurred on July 19, 2016. (Docket Nos. 1-1 ¶¶ 24-25; 41 ¶¶ 18-19).  On November 30, 2012, TZC entered into an agreement with the New York State Thruway Authority to design and construct two new bridge structures over the Hudson River between Rockland and Westchester Counties. (Docket No. 1-1 ¶ 10).  TZC subsequently purchased a Manitowoc MLC300 crane ("the Crane") from Hoffman, an authorized dealer for Manitowoc, for TZC's use in connection with the construction project. (Docket No. 1-1 ¶¶ 11-12).  Allied alleges that both Hoffman and Manitowoc knew that TZC intended to use the Crane for the bridge project, and provided operating manuals, technical support, and "hands-on technical services" to TZC. (Docket No. 1-1 ¶¶ 17-18).  Allied further alleges that Hoffman and Manitowoc made representations to TZC regarding the Crane's "unique features" and its suitability and fitness as well as its ability to "safely and properly operate … to install foundation piles for the new south bridge span." (*Id.* ¶¶ 19-21).  According to Allied, TZC was induced to purchase the Crane based on these representations. (*Id.*).  After purchasing the Crane, TZC installed it in accordance with the instructions and directions provided by Hoffman and Manitowoc. (*Id.* ¶¶ 22, 30).

On July 19, 2016, the Crane collapsed, injuring several individuals and causing damage to the bridge. (Docket No. 1-1 ¶¶ 24-25).  After investigating the collapse, TZC concluded that (1) design and functional deficiencies rendered the Crane unsafe; (2) both Hoffman and Manitowoc provided inadequate instructions to TZC concerning the Crane's installation and use; and (3) Hoffman and Manitowoc failed to warn TZC of risks inherent in the Crane's "unique features." (*Id.* ¶¶ 28-29).

---

accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor") (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)).

Thereafter, TZC submitted a claim to Darwin Select Insurance Company[4] ("Darwin") seeking reimbursement under the subject policy for the full amount of property damage TZC sustained due to the Crane collapse. (*Id.* ¶ 34). Darwin paid and reimbursed TZC in excess of $2,428,929.92. (*Id.* ¶ 35). Thereafter, Allied commenced the underlying action as subrogee of TZC, seeking to recover these payments from Hoffman and Manitowoc. (*Id.* ¶¶ 36).

**B. The Third-Party Action**

Third-Party Plaintiffs claim that Fluor, American Bridge, Granite, and Traylor—the Third Party Defendants—"formed a consortium known as Tappan Zee Constructors, LLC." (Docket No. 41 ¶ 11). According to Third-Party Plaintiffs, this "consortium" subsequently entered into an agreement with the New York State Thruway Authority to construct and design two new bridge structures between Rockland and Westchester Counties. (*Id.* ¶ 12). This agreement was memorialized in a "Design-Build Project" contract,[5] which describes TZC as "a limited liability company (LLC), whose members are Fluor Enterprises, Inc., American Bridge Company, Granite Construction Northeast, Inc., and Traylor Bros., Inc." (Docket No. 67-3 at 2).

Third-Party Plaintiffs claim that prior to and on the date of the Crane collapse, Third-Party Defendants "individually and collectively furnished managerial and supervisory services for the Tappan Zee Bridge project." (*Id.* ¶ 15). This included providing engineering personnel that were paid by and under the direct control of Third-Party Defendants, not TZC. (*Id.* ¶¶ 15-16). Third-Party Plaintiffs further claim that Third-Party Defendants' managerial and

---

[4] "Allied" was formerly known as "Darwin Select Insurance Company." (Docket No. 1-1 ¶ 1).

[5] The Court may consider this contract in deciding the instant motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference") (internal quotations omitted).

supervisory employees were responsible for ensuring that the equipment at the bridge project, including the Crane, was installed properly and operated in a safe manner. (*Id.* ¶¶ 17, 19).

Third-Party Plaintiffs claim that the Crane collapsed due to a sudden loss of load, leading to a structural failure, which was "the direct and proximate result of the negligence, carelessness and recklessness of the third-party defendants, Fluor, [American] Bridge, Granite and Traylor." (Docket No. 41 ¶¶ 18-19).  Third-Party Plaintiffs further allege that Third-Party Defendants were negligent, careless, and reckless by failing to, *inter alia*, implement appropriate safety protocols to ensure that the equipment, including the Crane, was properly installed, assembled and used, and failed to clarify any issues they had concerning the Crane's operation with either Manitowoc or Grove. (*Id.* ¶ 20).  Thus, in the event that Third-Party Plaintiffs are liable in the underlying action brought by Allied, they claim that they are entitled to judgment against Third-Party Defendants in whole or in part in contribution or indemnity. (*Id.* ¶¶ 21-22).

## II.  MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A court deciding a motion to dismiss must accept all of the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss … we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.") (citations and internal quotation marks omitted)).  The facts alleged must be more than legal

conclusions. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration, citation and internal quotation marks omitted)).

The court must also determine whether the factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim to relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely 'alleged' but not 'show[n] that the pleader is entitled to relief.'" *9 Recordings Ltd. v. Sony Music Entm't*, 165 F. Supp. 3d 156, 160 (S.D.N.Y. 2016) (quoting *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks omitted)). Thus, if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

Third-Party Defendants argue that the TPC should be dismissed because: (1) the anti-subrogation rule precludes Third-Party Plaintiffs from recovering against Third-Party Defendants; and (2) Third-Party Plaintiffs have failed to allege facts sufficient to pierce TZC's corporate veil and hold Third-Party Defendants liable for an alleged breach of duty by TZC.

(Docket No. 67-5 at 10-25[6]).  Third-Party Plaintiffs argue that the anti-subrogation rule is inapplicable in the instant case, and that they do not seek to pierce the corporate veil, but rather are alleging that Third-Party Defendants committed tortious acts "independently of TZC." (Docket No. 68 at 6-10).

**A. The Anti-Subrogation Rule**

"Subrogation is an equitable doctrine that 'entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.'" *ELRAC, Inc. v. Ward*, 96 N.Y.2d 58, 75 (2001) (quoting *N. Star Reins. Corp. v. Cont'l Ins. Co.*, 82 N.Y.2d 281, 294 (1993)).  The New York State Court of Appeals has "long recognized an insurer's equitable right to bring a subrogation action against a third party whose wrongdoing has caused a loss to its insured." *Id.* at 76.  However, an insurer has no right to recover against its own insured for the "very risk for which the insured was covered." *Id.* (internal quotations omitted).

"The antisubrogation rule is a common-law doctrine crafted by the New York Court of Appeals 'both to prevent the insurer from passing the incidence of loss to its own insured and to guard against the potential for conflict of interest that may affect the insurer's incentive to provide a vigorous defense for its insured.'" *ACE Am. Ins. Co. v. Am. Guarantee & Liab. Ins. Co.*, 257 F. Supp. 3d 596, 601 (S.D.N.Y. 2017) (quoting *N. Star Reins. Corp.*, 82 N.Y.2d at 294–95).  The anti-subrogation rule primarily applies in circumstances where an insurer seeks to recover from its insured for "'the same risk *covered* by its policy.'" *Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d 576, 581 (S.D.N.Y. 2014) (quoting *ELRAC, Inc.*, 96 N.Y.2d at 75) (emphasis in original).  "The essential element of the antisubrogation rule is that the party

---

[6] All page numbers, unless otherwise specified, refer to the numbers affixed upon the electronic filing of the document.

to which the insurer seeks to subrogate is covered by the relevant insurance policy." *Millennium Holdings LLC v. Glidden Co.*, 27 N.Y.3d 406, 416 (2016). "Furthermore, the antisubrogation principle bars claims not only against the individual or entity who is directly insured, but also to 'additional insureds' when there is an express indemnity agreement." *Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co.*, 475 F. Supp. 2d 400, 407 (S.D.N.Y. 2007) (quoting *Allianz Ins. Co. v. Otero*, 353 F. Supp. 2d 415, 426–27 (S.D.N.Y. 2004)); *see also Millennium Holdings*, 27 N.Y.3d at 415 ("Insurers are barred under the antisubrogation rule from seeking subrogation from a named insured or additional insureds.").

   The anti-subrogation rule is typically raised where an insurer seeks contribution or indemnification from its own insured, thus creating the very conflict of interest that the rule seeks to limit. *See Millennium Holdings*, 27 N.Y.3d at 416. However, Third-Party Defendants do not seek to apply the anti-subrogation rule in this manner. (Docket No. 67-5 at 17). Rather, they maintain that the anti-subrogation rule should bar Third-Party Plaintiffs from seeking indemnification or contribution from Third-Party Defendants because Third-Party Plaintiffs are able to assert the same claims and defenses against Allied in the underlying action. (*Id.* at 10, 14, 16-17). Specifically, Third-Party Defendants argue that because TZC is responsible for the alleged negligence of its members—Flour, American Bridge, Granite, and Traylor (Third-Party Defendants)—and Allied, by "stand[ing] in TZC, LLC's shoes with respect to recouping money paid to TZC, LLC" is responsible for those same negligent acts, that Third-Party Plaintiffs can therefore obtain any reduction or set-off due to Third-Party Defendants' alleged negligence or carelessness by asserting such a defense against Allied in the underlying action. (*Id.* at 17). In short, Third-Party Defendants argue that this third-party action is superfluous. Third-Party Plaintiffs counter that the anti-subrogation doctrine does not bar the third-party action because

"the real party in interest [Allied] is not seeking to recover from its insured [TZC]" and is not seeking to shift liability to one of its insureds. (Docket No. 68 at 6-8).  Third-Party Plaintiffs also contend that the record is silent with respect to whether the Allied insurance policy covers Fluor, American Bridge, Granite, and Traylor, a fact that they claim weighs against preclusion by the anti-subrogation doctrine. (*Id.* at 7).  After a careful review of the parties' arguments, the Court finds that the anti-subrogation doctrine—at least at this stage of the litigation—does not preclude the third-party action.

Neither party cites any case from this Circuit or New York State court that directly answers whether Third-Party Plaintiffs may maintain a third-party action against Third-Party Defendants.  Nor does there appear to be caselaw in either jurisdiction that has directly addressed whether a third-party action may be maintained against a plaintiff's subrogor, or a party over which there appears to be some dispute concerning whether they are covered by the relevant insurance policy, as is the case here.  Thus, in deciding the instant motion to dismiss, the Court will draw on general principles of New York subrogation law, as well as decisions by courts in other jurisdictions when faced with similar circumstances.

In *Farmers Mut. Ins. Co. of Mason Cnty. v. Stove Builder, Inc.*, Civil Action No. 17-169-WOB-CJS, 2019 WL 1301990, at *3 (E.D. Ky. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1302354 (Mar. 21, 2019), the defendants moved to file a third-party complaint against the insureds/homeowners for contribution where the underlying action— brought by the homeowner's insurance company—sought to recoup from defendants proceeds paid to the homeowners.  In denying the defendants' request, the court reasoned that the third-party action was "unnecessary" because the insurer had already compensated the homeowners, and, in doing so, acquired not only all rights and remedies that belonged to the homeowners, but

also the obligation to defend against any defenses that could have been asserted against them by the defendants. *See id.* In *Am. Fire and Cas. Co. v. Material Handling Supply, Inc.*, Civil No. 06-1545 (JBS), 2007 WL 1296200, at *2 (D.N.J. Apr. 27, 2007), the court arrived at a similar conclusion when it denied a defendant's motion for leave to file a third-party complaint against insureds/subrogors for negligent ownership, maintenance, servicing and inspection. The court determined that the defendant could "raise at trial any defenses it ha[d] against plaintiff's insureds and, therefore, the joinder of the insureds serve[d] no purpose." *Id.* The court went on to describe joinder of the insureds as "futile" because the insurance company could not subrogate against its own insureds, and the proposed third parties "cannot be held jointly liable with [defendant] to [the insurance company]" since the insurer "ha[d] no independent basis of liability against its own insureds." *Id.* Similarly, in *Cont'l Cas. Co. v. Equity Indus. Maple Heights, LLC*, Case No. 1:16 CV 453, 2017 WL 1317123, at *3 (N.D. Ohio Apr. 10, 2017), the court rejected third-party claims against the insured in a subrogation action. In granting the third-party defendant's motion to dismiss, the court ruled that the third-party plaintiffs—the defendants in the underlying action brought by the insurance company—could assert any contribution claims they were attempting to interpose in the third-party action as defenses against the insurance company in the underlying action. *See id.* The court also observed that the third-party plaintiffs already understood this principle, as they had asserted affirmative defenses in the underlying action premised on the theory of, *inter alia*, contributory negligence, comparative fault, and failure to mitigate damages. *See id.*

In rejecting the third-party actions, the courts in the foregoing cases relied heavily on the principle that the third-party plaintiffs could assert the claims in their respective proposed third-party actions as affirmative defenses in the underlying actions brought by the insurers/subrogees.

10

Third-Party Defendants make a similar argument in their motion to dismiss. (Docket No. 67-5 at 10, 17).  Specifically, they assert that Third-Party Plaintiffs may argue as a defense in the underlying action brought by Allied that TZC or Third-Party Defendants were responsible for the damage, thus obviating the need for the instant third-party action. (*Id.*).  This argument is premised on the well-established subrogation principle that Allied's "claim as subrogee is subject to whatever defenses the third party might have asserted against its insured." *Fed. Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 372 (1990).  To operate in the instant case the Allied insurance policy must cover not only TZC's actions, but also those of Fluor, American Bridge, Granite, and Traylor (Third-Party Defendants).  However, Third-Party Plaintiffs dispute this fact, asserting that Allied "does not insure both TZC and Fluor, American Bridge, Granite and Traylor under the same policy for the same specific risks covered by the policy," rendering the anti-subrogation rule inapplicable. (Docket Nos. 41 ¶¶ 13-17, 68 at 8).

If, as Third-Party Plaintiffs argue, Fluor, American Bridge, Granite, and Traylor are not covered by the Allied insurance policy, it is unlikely that the anti-subrogation doctrine would bar the instant third-party action. *See Millennium Holdings*, 27 N.Y.3d at 415 ("[S]ubrogation is typically permissible where the third party is not a named or additional insured") (collecting cases); *see also Flowers v. KG Land N.Y. Corp.*, 219 A.D.2d 579, 580–81 (2d Dep't 1995) (which held that the anti-subrogation doctrine did not bar third-party action where the third-party plaintiffs'—construction and building companies—sought indemnification and contribution from the employer of an employee that was injured on the premises where it was undisputed that the employer was not covered under the insurance policy covering the third-party plaintiffs).

Even if Third-Party Defendants were insured in some capacity under the Allied policy, the anti-subrogation doctrine might not bar the third-party action if they were insured for

11

different risks than TZC. *See, e.g.*, *Utica Mut. Ins. Co. v. Brooklyn Navy Yard Dev. Corp.*, 52 A.D.3d 821, 822–23 (2d Dep't 2008) (finding the anti-subrogation rule inapplicable even where the defendants were named as "additional insureds" under the insurance policy supplied by plaintiff because the defendants failed to "tender proof foreclosing the possibility that [plaintiff] properly covered [the subrogor] pursuant to the property damage policy, under which the defendants are not named as additional insureds"); *Raj v. Olshan*, 735 N.Y.S.2d 710, 711 (1st Dep't 2001) (anti-subrogation rule did not operate to bar landlord's third-party complaint against the restaurant where the relevant insurance policy did not cover the same risks). The New York State Court of Appeals has also observed that while courts have "extended the antisubrogation rule to third parties who are not covered by the insurance policy," such contexts are "limited." *Millennium Holdings*, 27 N.Y.3d at 417.

Given the disagreement over whether, or to what extent, the Allied insurance policy covers Fluor, Granite, American Bridge, and Traylor, the Court cannot determine whether the anti-subrogation doctrine applies, and thus cannot grant Third-Party Defendants' motion to dismiss at this early stage. The court's decision in *Hanover Ins. v. Mi-Jack Prods., Inc.*, Civil Action No.: 17-8299 (JLL), 2018 WL 4761579, at *3 (D.N.J. Oct. 1, 2018), is instructive. In *Hanover*, the insurer—Hanover—brought the underlying action against the defendant to recoup insurance proceeds paid to Norfolk Southern ("Norfolk") following an incident causing damage to a truck. *See id.* at *1. Norfolk had entered into an "operating agreement" with H&M, the third-party defendant, who agreed to perform certain services and also purchased the relevant insurance policy from Hanover, which insured the truck. *See id.* Defendant filed a third-party action against H&M, seeking indemnification and contribution if it was held liable to Hanover in the underlying action. *See id.* Third-party defendant/H&M moved to dismiss, arguing that the

anti-subrogation principle barred the third-party action. *See id.* at *1–2.  In denying H&M's motion, the court determined that it was unable to ascertain at the pleading stage whether H&M was an "insured," "co-insured," or an "additional insured" under the relevant insurance policy. *Id.* at *3.  In arriving at this conclusion, the court highlighted that the insurer only brought the underlying action as the subrogee of Norfolk, not H&M, a fact that weighed in favor of denying the motion to allow for discovery. *See id.*

Similar to *Hanover*, the pleadings here do not provide any guidance on whether the Allied insurance policy covers Third-Party Defendants and, if so, the scope of such coverage. (Docket Nos. 1-1 and 41, *generally*).  Moreover, the parties dispute whether the policy does, in fact, cover Third-Party Defendants. (Docket Nos. 67-5 at 10, 16-17; 68 at 7-8; 70 at 6-8, 10-11). Additionally, Allied only brought the underlying action on TZC's behalf and did not mention Fluor, American Bridge, Granite, or Traylor in its Complaint. (Docket No. 1-1).  The parties also dispute the role of Third-Party Defendants in TZC's corporate structure.  Third-Party Plaintiffs argue that while TZC employed "hourly labor and union workers," Fluor, American Bridge, Granite, and Traylor "furnished managerial and supervisory services … through their employees," who were responsible for "assur[ing] that the equipment used at the Tappan Zee Bridge project was safely set up and operated," and that these employees remained on the payroll and under the control of Third-Party Defendants, not TZC. (Docket No. 41 ¶¶ 15-17; 68 at 3-5). On the other hand, Third-Party Defendants argue that TZC "is made up solely of four members who are Third-Party Defendants," as evidenced by the agreement between TZC and the New York State Thruway Authority, (Docket No. 67-3), that TZC was "responsible for the allegedly negligent acts of its members" (Fluor, American Bridge, Granite, and Traylor), and thus permitting the instant third-party action "would completely defeat the purpose of insuring an

13

LLC." (Docket No. 67-5 at 16-17).  These disputes and ambiguities concerning the insurance policy coverage, as well as the interplay between TZC and Third-Party Defendants, militate in favor of denying the motion to dismiss to allow for discovery.[7]

Accordingly, the Court denies Third-Party Defendants' motion to dismiss the TPC based on the anti-subrogation rule.

## B. Piercing the Corporate Veil

Third-Party Defendants also argue that the third-party action should be rejected as an improper attempt by Third-Party Plaintiffs to pierce TZC's corporate veil. (Docket No. 67-5 at 17-24).  Third-Party Plaintiffs respond that they are not seeking to pierce the corporate veil, as they do not allege that Fluor, American Bridge, Granite, and Traylor are "liable solely by virtue of their status as members of the limited liability company," but rather because they "acted independently of TZC" in committing tortious acts. (Docket No. 68 at 9).

"In general, New York courts will pierce the corporate veil 'whenever necessary to prevent fraud or achieve equity.'" *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 377 (S.D.N.Y. 2003) (quoting *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417 (1966)).  However, the New York State Court of Appeals has determined that a party seeking to piece the corporate veil must demonstrate that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such

---

[7] In opposition, Third-Party Plaintiffs submitted deposition testimony in support of their claim that Third-Party Defendants acted independently from TZC. (Docket Nos. 69-1-69-4; *see also* Docket No. 41 ¶¶ 14-17).  Third-Party Defendants briefly address these submissions on reply, arguing that the deposition testimony should not be considered in deciding the instant motion. (Docket No. 70 at 11-12 n.5).  The Court agrees with Third-Party Defendants.  Given that the testimony was submitted in an effort to prove a critical issue in the third-party action, and because Third-Party Defendants "have not yet had an opportunity to present contrary evidence, the Court concludes that this testimony is subject to reasonable dispute," and may not be considered unless the Court converts the instant motion to one for summary judgment, which the Court declines to do. *Corbett v. City of New York*, No. 1:15-CV-09214-GHW, 2016 WL 7429447, at *5 (S.D.N.Y. Dec. 22, 2016) (internal quotations omitted).

domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Matter of Morris v. N.Y.S. Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141 (1993). Both elements must be established to permit a party to pierce the corporate veil. *See EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (citing *TNS Holdings, Inc. v. MKI Secs. Corp.*, 92 N.Y.2d 335, 339 (1998)). "As for the threshold for wrongdoing, prior decisions have emphasized that the controlling party must compel the corporation to act in furtherance of a deceitful or otherwise unjust purpose." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F. Supp. 3d 388, 403 (S.D.N.Y. 2015), *aff'd*, 716 F. App'x 23 (2d Cir. 2017) (collecting cases).

Third-Party Plaintiffs do not argue that Fluor, American Bridge, Granite, or Traylor "exercised complete domination" over TZC. *Matter of Morris*, 82 N.Y.2d at 141. Rather, they claim that Third-Party Defendants acted in an independently negligent manner and, to the extent that Third-Party Plaintiffs are liable to Allied, Third-Party Plaintiffs should be entitled to contribution or indemnification, in whole or in part, from Third-Party Defendants. (Docket No. 68 at 9). In fact, nothing in the TPC sets forth facts that would meet the demanding burden necessary to pierce the corporate veil. (*See* Docket No. 41, *generally*). Although Third-Party Defendants acknowledge that Third-Party Plaintiffs do not seek to pierce the corporate veil, they maintain that Third-Party Plaintiffs' failure to do so—or allege sufficient facts to pierce the corporate veil—should operate to bar the third-party action in its entirety. (Docket No. 67-5 at 24-25). This argument fails. Factual issues exist concerning, in part, (1) whether the supervisory and managerial oversight provided by Fluor, American Bridge, Granite, and Traylor to TZC's employees and their allegedly negligent actions were covered by the Allied policy; (2) whether such risks were foreseeable to Allied when it issued the policy to TZC; and (3) whether TZC is

15

responsible for the negligent acts of Third-Party Defendants based on their status as subrogor in the underlying action. Accordingly, at this stage, the Court cannot dismiss the TPC on this ground.

## IV. CONCLUSION

For the foregoing reasons, Third-Party Defendants' motion to dismiss the Amended Third-Party Complaint is denied.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 67).

Dated:   August 21, 2020
         White Plains, New York

                                      **SO ORDERED:**

                                      _____
                                      JUDITH C. McCARTHY
                                      United States Magistrate Judge